IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| KEVIN CRACCO, | ) |
| Plaintiff, | ) |
| v. | ) No. 07 C 0756 |
| VITRAN EXPRESS, INC., | ) |
| Defendant. | ) |

## MEMORANDUM OPINION

SAMUEL DER-YEGHIAYAN, District Judge

This matter is before the court on Defendant Vitran Express, Inc.'s ("Vitran") motion for summary judgment and Plaintiff Kevin Cracco's ("Cracco") motion to bar evidence submitted in support of Vitran's motion for summary judgment. For the reasons stated below, we grant Vitran's motion for summary judgment in its entirety. We also deny Cracco's motion to bar as moot.

## BACKGROUND

Cracco alleges that he was employed by Vitran as a "Service Center Manager" from June 1991 through November 2006. On October 6, 2006 Cracco

was allegedly hospitalized with a serious health condition that made him unable to perform his job. Cracco allegedly requested and received protected medical leave from Vitran as is required under the Family Medical Leave Act ("FMLA"), 28 U.S.C. § 2615, *et seq*. When Cracco returned to work on November 13, 2006, Vitran allegedly informed Cracco that it was terminating his employment. Cracco alleges that the decision to terminate him was actually made prior to his return from leave and that several Vitran executives had participated in conversations regarding the legal ramifications of terminating an employee who was returning from medical leave. Vitran's explanation for Cracco's termination was that, during his absence, several employees allegedly uncovered numerous problems with Cracco's work product. Cracco alleges, however, that Vitran's explanation is a mere smokescreen for an unlawful discriminatory intent to terminate him for asserting his rights under the FMLA.

Cracco brings two claims under the FMLA: one asserting that Vitran interfered with his FMLA rights by failing to restore him to his previous position ("Interference Claim") and another claim asserting that Vitran retaliated against him in its decision to terminate his employment ("Retaliation Claim").

## LEGAL STANDARD

Summary judgment is appropriate when the record, viewed in the light most favorable to the non-moving party, reveals that there is no genuine issue as to any

material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). In seeking a grant of summary judgment, the moving party must identify "those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)). This initial burden may be satisfied by presenting specific evidence on a particular issue or by pointing out "an absence of evidence to support the non-moving party's case." *Id.* at 325. Once the movant has met this burden, the non-moving party cannot simply rest on the allegations in the pleadings, but, "by affidavits or as otherwise provided for in [Rule 56], must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). A "genuine issue" in the context of a motion for summary judgment is not simply a "metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986). Rather, a genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986); *Insolia v. Philip Morris, Inc.,* 216 F.3d 596, 599 (7th Cir. 2000). The court must consider the record as a whole, in a light most favorable to the non-moving party, and draw all reasonable inferences that favor the non-moving party. *Anderson,* 477 U.S. at 255; *Bay v. Cassens Transport Co.,* 212 F.3d 969, 972 (7th Cir. 2000).

## DISCUSSION

Under the FMLA, an eligible employee who works for a covered employer is entitled to take up to twelve work weeks of unpaid leave for serious health conditions. 29 U.S.C. § 2615(a)(1)-(2). The FMLA requires that, upon expiration of the qualified leave, the employee must be reinstated to the former position or an equivalent position. *See Kauffman v. Federal Express Corp.*, 426 F.3d 880, 884 (7th Cir. 2005)(including "reinstatement upon return from leave" as an employee's right under the FMLA) . Furthermore, the FMLA prohibits retaliation against employees who assert their FMLA rights and prohibits using an employee's FMLA leave as a negative factor in employment actions. 29 U.S.C. § 2615(a)(2).

### I. Cracco's Work Performance

Both Cracco's Interference Claim and his Retaliation Claim rest on Cracco's allegation that Vitran terminated his employment using a prohibited animus. (Ans. Mot. 6-9). Thus, at the outset, it is crucial to both claims that we resolve the question of whether there is a genuine issue of material fact regarding Cracco's work performance and Vitran's stated justification for terminating him.

Vitran has put forth evidence in its statement of facts to show that Cracco was not meeting legitimate expectations and that Cracco's performance deficiencies were the true reason that Cracco was fired. (SF Par. 6, 7, 32-47). Vitran advances two general arguments. First, it argues that when replacement employees were brought

in at the time of Cracco's FMLA leave of absence ("replacement employees"), they discovered numerous problems with Cracco's work product that had been previously undetected. (SF Par. 33). Second, Vitran alleges that during Cracco's FMLA leave, discrepancies in the shipping records were discovered that suggested to Vitran that Cracco had falsified records. (SF Par. 34).

### A. Terminal Disorganization

Cracco admits that he was responsible for "overall management of all that encompasses [Vitran's] service center." (RSF Par. 22). Cracco also admits that during his FMLA leave, several other Vitran employees were sent to Cracco's terminal as replacements. (RSF Par. 32). In a statement supported by the depositions or declarations of four Vitran employees, including Cracco's manager at the time of his leave of absence, John Hartman ("Hartman"), Vitran stated that the terminal Cracco had overseen "was disorganized, employees were not following procedures, freight was sitting on the dock, damaged freight was hidden in trailers, safety concerns were noted, customers were complaining, and overtime was not being handled properly." (SF Par. 33). Cracco made no effort to deny these facts as stated in Vitran's statement of facts. (RSF Par. 33). Instead, Cracco objected to the statement, claiming that "it is inconceivable how the Plaintiff could either admit to or deny a compound paragraph that contains numerous alleged facts." (RSF Par. 33).

5

Local Rule 56.1 requires that each statement of material fact be included in "short numbered paragraphs." N.D. Ill. R. 56.1(a)(3)(B). Although Vitran's statement relating to Cracco's work product, as discovered by the replacement employees, describes several different conditions of the work space, the statement relates to a single impression by Vitran employees brought in to replace Cracco. (SF Par. 33). Furthermore, Vitran's statement is short and concise and proper. Therefore, Cracco's objection to Vitran's statement is improper and his response constitutes an evasive denial. Pursuant to Local Rule 56.1, any facts included in a party's Local Rule 56.1 statement of facts that are not properly denied by the opposing party are deemed to be admitted. N.D. Ill. R. 56.1; *Dent v. Bestfoods,* 2003 WL 22025008, at *1 n.1 (N.D. Ill. 2003); *See also Jankovich v. Exelon Corp.,* 2003 WL 260714, at *5 (N.D. Ill. 2003)(indicating that evasive denials that do not directly oppose an assertion are improper and thus the contested fact is deemed to be admitted pursuant to Local Rule 56.1). Since Cracco has not properly denied or objected to Vitran's statement regarding the impressions of the replacement employees, these facts are deemed admitted pursuant to Local Rule 56.1.

### B. Records Discrepancies

Vitran also offered statements of fact indicating that replacement employees, along with Hartman, discovered discrepancies in the shipment records that indicated to Vitran that Cracco had not accurately maintained the records. (SF Par. 34).

Specifically, Vitran contends that one replacement employee initially "discovered discrepancies with Vitran's freight documents." (SF Par. 34). Vitran contends that this replacement employee went to Hartman with the discovery. (SF Par. 37). Vitran contends that Hartman then conducted an investigation of his own in which he also discovered discrepancies, all of which occurred under Cracco's log-in code. (SF Par. 41).

In response to each of these contentions, Cracco denied the facts, citing his own deposition in which he stated that he never falsified records for Vitran and citing the declaration of Cracco's former supervisor, Charles Webber ("Webber"), who stated that he "was not aware of any situation in which Kevin Cracco manipulated the company's system to disguise delayed freight." (RSF Par. 34, 37, 41).

The statement by Webber does not support Cracco's denial of these facts. Cracco admits that at the time of the investigation into Cracco's records, Webber had been demoted and was no longer Regional Vice President. (RSF Par. 48). The fact that Cracco's *former* supervisor was "not aware" of record discrepancies is irrelevant to the issue of what Cracco's *new* supervisor found. Thus, Cracco cannot rely on Webber's testimony to contradict Vitran's allegations regarding discrepancies in the shipping records.

Cracco's citation of his own deposition also fails to contradict Vitran's statements. Cracco merely stated that he did not falsify records. (RSF Par. 34, 37,

7

41). Since Cracco has stated under oath that he did not falsify records, at the summary judgment phase we must interpret Cracco's statement to be fact. *Anderson*, 477 U.S. at 255; *Bay*, 212 F.3d at 972 (stating that courts must consider the record as a whole, in a light most favorable to the non-moving party, and draw all reasonable inferences that favor the non-moving party). However, the issue in this case is not whether Cracco falsified records. The issue is whether Vitran acted with a prohibited animus when terminating Cracco. *Rogers v. City of Chicago*, 320 F.3d 748, 753 (7th Cir. 2003). Vitran has offered evidence that it discovered discrepancies in the records that indicated that Cracco had falsified records and that "[g]iven the number of inaccurate entries, and the suspicious temporal proximity of the entries, Hartman believed that the entries were not errors and instead were [Cracco's] attempts to disguise late and damaged deliveries." (SF Par. 45). Cracco has not actually pointed to any evidence that these discoveries were not made. Whether Cracco, in fact, falsified records is irrelevant so long as Vitran can point to undisputed evidence that it discovered record discrepancies and that this led it to the reasonable *belief* that Cracco had falsified records. *Rogers*, 320 F.3d at 753 (7th Cir. 2003) (stating that evidence should be related to the defendants' "prohibited animus"). Vitran has pointed to such evidence and Cracco has failed to properly dispute it. (RSF 34, 27, 41). Thus, Vitran's narration regarding its investigation of Cracco's record discrepancies is deemed to be admitted. N.D. Ill. R. 56.1; *Dent*, 2003 WL 22025008, at *1 n. 1; *see also Jankovich*, 2003 WL 260714, at *5

(indicating that evasive denials that do not directly oppose an assertion are improper and thus the contested fact is deemed to be admitted pursuant to Local Rule 56.1).

II. Cracco's Retaliation Claim

Cracco argues that he has raised a genuine issue of material fact as to whether Vitran's decision to terminate his employment constituted unlawful retaliation in violation of the FMLA. (Ans. Mem. 9). The Seventh Circuit has stated that FMLA claims brought under either discrimination or retaliation theories "require [ ] proof of discriminatory or retaliatory intent...." *Kauffman*, 426 F.3d at 884. To survive a motion for summary judgment, a plaintiff may proceed under either the direct or indirect methods of proof. *See Buie v. Quad/Graphics, Inc.*, 366 F.3d 496, 503 (7th Cir. 2004)(stating that FMLA claims for retaliation are evaluated in the same manner as other employment discrimination claims).

A. Direct Method

Despite its name, the direct method of proof for retaliation cases does not require a plaintiff to produce *direct evidence*. *Perdomo v. Browner*, 67 F.3d 140, 144, n.1 (7th Cir. 1995). Under the direct method of proof, a plaintiff may rely on either a direct admission by a decision-maker that shows "his actions were based upon the prohibited animus" or circumstantial evidence that "allows a jury to infer intentional discrimination by the decision-maker." *Buie*, 366 F.3d at 503 (quoting

*Rogers,* 320 F.3d at 753)(internal quotations removed). The Seventh Circuit requires plaintiffs to put forth a "convincing mosaic" of direct or circumstantial evidence to show that the employer acted with discriminatory intent. *Walker v. Bd. of Regents of Univ. of Wis.,* 410 F.3d 387, 394 (7th Cir. 2005)).

In the instant case, Cracco argues that he can satisfy his burden under the direct method. (Ans. Mem. 9). However, Cracco has put forth no evidence of a direct admission by any employee of Vitran or even circumstantial evidence strong enough to allow a jury to *infer* intentional retaliation. In support of his claim Cracco relies on only four items of evidence: (1) prior to his leave Cracco had a positive employment history with Vitran, which included a positive review from his manager immediately prior to his leave; (2) Vitran executives discussed notifying human resources and risk management prior to deciding whether to terminate Cracco; (3) an email sent among Vitran executives prior to Cracco's termination stated that these executives wanted to "build [a] case on [Cracco];" and (4) Cracco was terminated the day of his return from medical leave, which constituted suspicious timing. (Ans. Mem. 11-13). These four facts alone, even if true, do not represent a "convincing mosaic" of evidence that would justify the use of the direct method of proof in this case. *Walker,* 410 F.3d at 394. Cracco must therefore proceed under the indirect method.

B. Indirect Method

10

If a plaintiff fails to show discriminatory or retaliatory intent under the direct method, the plaintiff may also prove unlawful intent using the burden-shifting analysis, also known in the Seventh Circuit as the "indirect method," set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). To prevail under this indirect method of proof, a plaintiff must first establish a *prima facie* case of retaliation in violation of the FMLA. *Hilt-Dyson v. City of Chicago*, 282 F.3d 456, 465 (7th Cir. 2002). Once a plaintiff has established a *prima facie* case of retaliation, the burden shifts to the defendant to provide a legitimate non-discriminatory reason for the adverse action. *Id.* If the defendant provides such a reason, the burden shifts back to the plaintiff to show that the defendant's reason was a pretext for unlawful retaliation. *Id.*

### 1. Cracco's *Prima Facie* Case

To establish a prima facie case of retaliation, a plaintiff must show that: "(1) he is a member of a protected class; (2) he was meeting his employer's legitimate expectations at the time of the alleged adverse action; (3) he was subjected to an adverse employment action; and (4) the employer treated similarly situated employees not in the protected class more favorably." *Scaife v. Cook County*, 446 F.3d 735, 739-40 (7th Cir. 2006).

In this case, the first and the third factors are not in dispute. Vitran acknowledges that Cracco was a member of a protected class under FMLA since he

was an employee on FMLA leave. (SJ Mem. 9-11)(not contesting the first factor). Vitran also acknowledges that Cracco was subjected to an adverse employment action because Cracco was terminated which is the very definition of an adverse employment action. (SJ Mem. 9-11)(not contesting third factor).

There is a factual dispute on the fourth issue regarding whether similarly situated employees at Vitran were treated more favorably. Both sides cite conflicting information on this issue and dispute whether other terminated employees at Vitran were indeed similarly situated. (SF Par. 64-66)(RSF Par. 38-40). Because there is a factual dispute in the record on this issue, we will not resolve it at the summary judgment phase.

Next we turn to the second *prima facie* factor regarding whether Cracco was meeting Vitran's legitimate expectations at the time of the alleged adverse action. As stated above, Cracco has not properly denied Vitran's allegation that employees brought in to replace Cracco during his FMLA leave found that "[the terminal] was disorganized, employees were not following procedures, freight was sitting on the dock, damaged freight was hidden in trailers, safety concerns were noted, customers were complaining, and overtime was not being handled properly." (RSF Par. 33). These facts have been deemed admitted and constitute substantial uncontradicted evidence that Cracco was not meeting Vitran's legitimate expectations at the time that he was fired.

Furthermore, the only evidence Cracco cites in support of his argument that he

12

had met Vitran's legitimate expectations does not relate to the time of the alleged adverse action, but relates to his employment record *before* the time of his medical leave and is supported largely by the testimony of Webber, Cracco's *former* supervisor who had been demoted. (RSF Pars. 1-14, 48). However, Vitran has made it quite clear that its basis for Cracco's termination was not discovered until after Cracco's leave and came to light after Webber had been reassigned. (SF Par. 26). Even if we assumed a spotless performance history in the past, the relevant question in this case is Cracco's performance known to Vitran at the time of his termination. *See, e.g., Hong v. Children's Memorial Hospital,* 993 F.2d 1257, 1262 (7th Cir. 1993)(stating that an employee cannot satisfy its burden by only showing that legitimate expectations were met for some period of time before termination). Since Cracco has not put forth evidence establishing this factor and Vitran has put forth undisputed evidence that shows that Cracco was not meeting legitimate expectations, we find that Cracco has not satisfied the second factor necessary to establish a *prima facie* case.

### 2. Legitimate Non-Discriminatory Reason

Under the indirect method, if a plaintiff can establish a *prima facie* case, the burden shifts to the defendant to provide a legitimate and non-discriminatory reason for the adverse action. *Hilt-Dyson,* 282 F.3d at 465. We have found that Cracco has failed to establish a *prima facie* case. However, even if Cracco had established a

*prima facie* case, Vitran has met its burden by providing a legitimate non-discriminatory reason for the adverse action. In this case, Vitran has proffered such a reason both by pointing to the overall disorganization of Cracco's work product and the discrepancies in Vitran's shipping records as discovered by replacement employees. (SF Par. 32, 33). These facts constitute unrebutted evidence that Cracco would have been terminated regardless of his FMLA leave. As such, Vitran has met its burden under the second prong of the indirect method.

### 3. Pretext

In the final step of the indirect method burden shifting analysis the burden of proof shifts back to the plaintiff to show that the defendant's proffered explanation for the adverse action was a pretext for retaliation. *Hilt-Dyson,* 282 F.3d at 465. To survive a summary judgment motion, a plaintiff must present "evidence that calls into question the veracity of the defendant's explanation." *Olsen v. Marshall & Ilsley Corp.,* 267 F.3d 597, 601 (7th Cir. 2001); *see also Hudson v. Chicago Transit Auth.,* 375 F.3d 552, 561 (7th Cir. 2004)(stating that "[p]retext is more than a mistake on the part of the employer; it is a phony excuse"). In this case, Cracco rests on very few facts to establish that Vitran's explanation is pretext for unlawful retaliation.

Cracco relies heavily on what he alleges to be "suspicious timing" of Vitran's decision to terminate him. The Seventh Circuit has recognized that adverse

14

employment actions that occur in close temporal proximity to an employee's exercise of protected activity can be a factor to consider when determining whether an employer's proffered explanation is a pretext. *King v. Preferred Technical Group*, 166 F.3d 887, 893 (7th Cir. 1999). However, the Seventh Circuit has also recognized that suspicious timing alone is rarely sufficient to establish pretext. *Culver v. Gorman & Co.*, 416 F.3d 540, 546 (7th Cir. 2005). In this case, the suspicious timing argument is less compelling because Cracco's termination took place *after* Cracco took his FMLA leave. Vitran has offered evidence that shows that Cracco was actually paid by Vitran during his FMLA leave. (SF Par. 29). In response, Cracco only cited to an excerpt from his own deposition where he stated that he "did not recall getting paid when he was on FMLA leave." (RSF Par. 29). Such a response is not sufficient to constitute a denial. Thus, for the purposes of summary judgment, it is deemed admitted that Cracco was paid during his FMLA leave under Vitran's policy that grants twenty-eight days of full pay and 50 percent pay thereafter. Taking this into account, it is far less suspicious that Vitran terminated Cracco *after* his medical leave. Vitran correctly asserts that "had Vitran been motivated to terminate Plaintiff for taking FMLA leave, Vitran would have done so as soon as he left, not when he returned." (SJ Mem. 6). Vitran's explanation for the termination, that Cracco's performance deficiencies were discovered *during* Cracco's FMLA leave, also further mitigate any suspicious nature of the timing of Cracco's termination. Thus, this is clearly not a situation where

suspicious timing alone would be sufficient to establish pretext.

Aside from suspicious timing, Cracco only points to various dialogue between Vitran executives regarding the decision to terminate Cracco. (SAF Par. 25). Cracco makes much out of the fact that one email indicated that Vitran was "build[ing] a case on [Cracco]." (SAF Par. 25). This statement makes no reference to any prohibited motivation on the part of any Vitran executive. This phrase merely suggests that Vitran executives were compiling evidence of Cracco's performance deficiencies as a part of its decision to terminate Cracco. A reasonable trier of fact could not conclude that this statement, in the context it is presented, constitutes evidence of pretext.

Cracco has failed to provide evidence sufficient to establish a *prima facie* case. Furthermore, even if Cracco could establish a *prima facie* case, Vitran has put forth a legitimate non-discriminatory reason for terminating Cracco and Cracco has not put forth evidence to establish that this proffered explanation was a pretext. Therefore, we grant Vitran's motion for summary judgment on the retaliation claim.

## III. Cracco's Interference Claim

For Cracco to prevail on his Interference Claim he must show that Vitran deprived him of an FMLA entitlement. *Burnett v. LFW, Inc.*, 472 F.3d 471, 477 (7th Cir. 2006). Cracco must establish that: "(1) he was eligible for the FMLA's

protections, (2) his employer was covered by the FMLA, (3) he was entitled to leave under the FMLA, (4) he provided sufficient notice of his intent to take leave, and (5) his employer denied him FMLA benefits to which he was entitled." *Id.* The Seventh Circuit has stated that employers may fire employees on FMLA leave for performance if such an action would have occurred regardless of the employees' leave. *Kohls v. Beverly Enters. Wis. Inc.*, 259 F.3d 799, 805 (7th Cir. 2001). For employees to have an interference claim under FMLA they must have been deprived of a "right, benefit, or position of employment" that they would have been entitled to had they never left the workplace. *Id.*

At the outset we note that, as stated above, Vitran has offered undisputed evidence that shows that Cracco was terminated for performance issues unrelated to his FMLA leave. Thus, Cracco has not shown that the restoration of his job was a position of employment to which he would have otherwise been entitled. *Id.* Consequently, we grant Vitran's motion for summary judgment on the Interference Claim.

IV. Motion to Bar Evidence

Cracco has filed a motion to bar evidence submitted in support of Vitran's motion for summary judgment. In addition to voluminous other evidence, Vitran also included in its motion for summary judgment printouts of computer screens that allegedly showed entries made under Cracco's log-in code and printouts of shipment

delivery receipts that were previously scanned into Vitran's computer system that contained handwritten notations. These documents allegedly support Vitran's claims that falsified records under Cracco's name were discovered by Vitran employees during Cracco's leave of absence. We need not determine the admissibility of these documents because we have not relied on them in granting Vitran's motion for summary judgment. In granting summary judgment, we relied on the uncontradicted evidence of what Vitran employees *perceived* when they investigated Cracco's performance and records. We have not reached any conclusions on the issue of whether Cracco did *in fact* falsify records and such a conclusion is not necessary. Therefore, Cracco's motion to bar evidence is denied as moot.

## CONCLUSION

Based on the foregoing analysis, we grant Vitran's motion for summary judgment in its entirety and we deny Cracco's motion to bar evidence.

Samuel Der-Yeghiayan
United States District Court Judge

Dated: October 24, 2007